IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DARRELL WIMBERLY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:16-cv-202-NJR-DGW |
| | ) | |
| WEXFORD HEALTH SOURCES, INC., | ) | |
| TROST, JOHN DOE #1, KIMBERLY | ) | |
| BUTLER, SALVADORE GODINEZ, GAIL | ) | |
| WALLS, K. ALLSUP, and LORI OAKLEY, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge Nancy J. Rosenstengel pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the question of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 28 U.S.C. § 1997e(a). For the reasons set forth below, it is **RECOMMENDED** that the Motions for Summary Judgment filed by Defendants (Docs. 38 and 41) be **GRANTED IN PART** and that the Court adopt the following findings of fact and conclusions of law.

### INTRODUCTION

Plaintiff's Complaint, filed on February 25, 2016 (Doc. 1), alleges claims related to his incarceration at the Menard Correctional Center and the dental care that he received (or didn't receive) beginning in the Summer of 2014. Plaintiff claims that since that time, he has not been provided adequate care with respect to a cavity, which is now infected and causing pain and

suffering.  At the time the Complaint was filed, Plaintiff did not know the name of the dentist, who was being sued as John Doe #1.  Plaintiff has now supplemented his Complaint to include the name of the dentist, Dr. Strow.  As to the other Defendants, Plaintiff claims that he informed them (through correspondence and grievances) of the lack of dental care but that they did nothing.  And, Plaintiff claims that Wexford Health Sources has an unconstitutional policy and practice of providing ineffective pain medication and cancelling healthcare visits during lockdowns.  Plaintiff is proceeding on one count of deliberate indifference, in violation of the Eighth Amendment, against Defendants.  All Defendants (except for Dr. Strow) have sought summary judgment on the affirmative defense of failure to exhaust administrative remedies.

### FINDINGS OF FACT

On March 6, 2015, Plaintiff submitted an emergency grievance related to his dental care (Doc. 44, pp. 9-10).  He states that he has several cavities, that they were supposed to have been filled in the Summer of 2014, that "because of over-crowding and understaffing" he has had to wait, and that he is in a lot of pain from under-treatment.  Plaintiff further states that he wrote to Warden Butler three times, on December 3, 2014, January 18, 2015, and March 1, 2015, and he was told that he would be scheduled.  Plaintiff requested that he be seen for fillings and that he receive stronger pain medication than Ibuprofen.  The record contains no response to this emergency grievance.

On March 9, 2015, Plaintiff submitted a non-emergency grievance (Doc. 42-1, pp. 3-7).  In this grievance, Plaintiff states it was the fourth grievance he wrote (the previous grievances received no response) and that he required dental care.  Plaintiff outlined how he had been waiting for a year to have his teeth filled and that there appeared to be a strategy to wait for the teeth to deteriorate in order to pull them instead of filling them.  Plaintiff requested that the

matter be addressed and that his teeth be filled instead of pulled.  Counselor Allsup responded on May 7, 2015 with the notation that lockdowns prevented a March 24 and April 3 visit to the dentist, that lack of security prevented an April 16 visit, and that he was now scheduled to see the dentist on May 22, 2015.  Plaintiff appealed to the grievance officer who indicated that his appointment was again rescheduled due to a lockdown and that his next visit was scheduled for August 13, 2015.  The Warden concurred on July 31, 2015 and Plaintiff signed an appeal on August 26, 2015.  Plaintiff submitted the timely appeal for mailing on August 26, 2015 but, the Administrative Review Board did not receive the appeal until September 11, 2015.[1]  The ARB rejected the appeal as untimely on September 16, 2015.     Plaintiff     filed     no     subsequent grievances.

The only persons mentioned in these grievances are Dr. Strow, a dental assistant, Dr. Newbold, and Warden Butler.  At the hearing, Plaintiff testified that he submitted two other grievances in January and February 2015.   These grievances, which the Court finds that Plaintiff submitted for consideration, concerned Plaintiff's dental care: that he required fillings and that it was taking too long to complete.  Plaintiff placed these grievances in the bars of his cell to be picked up, they were picked up, but he received no response.  None of the grievances mention Wexford Health Sources, Inc., by name.  The grievances also do not mention Trost, Godinez, Walls, Allsup, or Oakley.

---

[1] This Court specifically finds that Defendants' timeliness arguments are wholly without merit. *See e.g. Taylor v Brown*, 787 F.3d 851, 858-859 (7th Cir. 2015) (discussing the prison mailbox rule in the context of documents mailed to a court clerk).  The justification for finding that prisoner documents are filed by a clerk on the day they are submitted for mailing by inmates applies with equal force to documents submitted for mailing or transmission by a prisoner to the ARB. In both circumstances, the day on which the documents are in fact mailed is beyond the prisoner's control.

CONCLUSIONS OF LAW

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FEDERAL RULE OF CIVIL PROCEDURE 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

The Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*,182

F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983).  Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006).  The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006).  This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90, (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)).  In finding that the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025.  In *Pavey*, the Seventh Circuit instructed District Courts to conduct a hearing to determine whether a Plaintiff has exhausted his remedies. *Id.* 544 F.3d at 742.  If a Plaintiff has exhausted his remedies, the case will proceed on the merits.  If, however, a Plaintiff has not exhausted, the Court may either allow Plaintiff to exhaust or terminate the matter.

Under the procedures set forth in the Illinois Administrative Code, an inmate must first attempt to resolve a complaint informally with his Counselor.  ILL. ADMIN. CODE TIT. 20, § 504.810(a).  If the complaint is not resolved, the inmate may file a grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. *Id*. §504.810(b).  The grievance officer is required to advise the Chief Administrative Officer ("CAO" – usually the Warden) at the facility in writing of the findings on the grievance. *Id.* §504.830(d).  The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed. *Id.* § 504.830(d).  An inmate may appeal the decision of the CAO

in writing within 30 days to the Administrative Review Board for a final decision. *Id.*, §
504.850(a). *See also Dole v. Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006). An inmate may
request that a grievance be handled as an emergency by forwarding it directly to the CAO. If the
CAO determines that there exists a substantial risk of imminent personal injury or other serious
or irreparable harm, the grievance shall be handled on an emergency basis, which allows for
expedited processing of the grievance by responding directly to the offender indicating what
action shall be taken. *Id.* §504.840.

An inmate is required to exhaust only those administrative remedies available to him. *See*
42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become
"unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*,
300 F.3d 829, 833 (7th Cir. 2002); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005). The
availability of a remedy does not depend on the rules and regulations as they appear on paper,
but on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v.
Sutton*, 310 Fed.Appx. 10, 13 (7th Cir. 2009). If further remedies are unavailable to the prisoner,
he is deemed to have exhausted. *Id.* Prisoners are required only to provide notice to
"responsible persons" about the complained-of conditions. *See Wilder*, 310 Fed.Appx. at 15
(citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). An inmate forfeits the grievance
process, however, when he causes the unavailability of a remedy by not filing or appealing a
grievance. *See Kaba*, 458 F.3d at 684.

By failing to respond to 3 grievances related to Plaintiff's dental care, the grievance
process was rendered unavailable. The first two grievances (submitted in January and February),
however, only would exhaust Plaintiff's claim that the dentist (i.e. Dr. Strow) was not filling his
cavities. While Plaintiff may have checked off the "staff conduct" box at the top of the

grievance, it would not have been reasonable to assume that he was complaining about the conduct of the remaining Defendants.

The March 6, 2015 grievance, however, was sufficient to also exhaust Plaintiff's claim against Warden Butler.  In his Complaint, Plaintiff claims that he wrote to Warden Butler on three occasions about the issues with his cavities (Plaintiff mentions these letters in the grievance) (Doc. 1, p. 8).  While Plaintiff did not spell out that he was dissatisfied with the lack of response, it does notify Warden Butler that he told him of his problems but that no action was taken.  Thus, the March 6 grievance is sufficient to exhaust his claim against Warden Butler, that he was indifferent to his health needs.

As to Defendants Trost, Godinez, Walls, Allsup, and Oakley, neither the March 6 nor the March 9 grievances exhaust his claims against them and Plaintiff filed no other grievances related to this matter.   Plaintiff states that he either sent letters to them or informed them of his dental condition after he submitted the March 6 emergency grievance and/or the March 9 grievance.  Thus, those grievances do not exhaust his claim that they failed to treat him or that they ignored his dental needs when he complained to them.  Rather, Plaintiff should have filed a new grievance concerning his belief that they were ignoring him or failing to ensure that he was being treated.   At the hearing, and in his papers, Plaintiff implies that by appealing the March 9 grievance, he was also appealing the lack of action of each of Defendants; this is simply incorrect.  Complaining that Dr. Strow (or dental staff) is failing to treat his cavities is a distinct and unique claim from complaining that non-medical or non-dental staff are ignoring his complaints about the lack of treatment.  *See Waldrop v. Wexford Health Sources, Inc.*, 646 Fed.Appx. 486, 490 (7th Cir. 2016).  Plaintiff should have, and did not, file a separate grievance about these Defendants.  Accordingly, Plaintiff has failed to exhaust his administrative remedies

as to Trost, Godinez, Walls, Allsup, and Oakley

With respect to Wexford, the Screening Order (Doc. 6) limited Plaintiff's policy or practice claim: "Wimberly implicates Wexford in, as a matter of policy, only distributing generic painkillers even if they are ineffective, and denying health care during lockdowns by cancelling call passes" (Doc. 6, p. 5).   The Court also dismissed without prejudice a claim that policies lead to overcrowding and under staffing.   In the March 6 grievance, Plaintiff complains of overcrowding and understaffing; however, he also states that he requires stronger medication than Ibuprofen to manage his dental pain.   While Plaintiff does not mention Wexford, it is obvious that he is complaining of practices: overcrowding, understaffing, and ineffective pain medication.   The March 9 grievance also can be read to include a policy argument: Plaintiff claims that dental care is delayed so that the offending tooth can be pulled out instead of filled.[2]

At this stage of the proceedings, the Court finds that these two grievances were sufficient to exhaust Plaintiff's policy and/or practice claim against Wexford.   Grievances are not meant to mirror complaints in federal court.   Rather, they are designed to alert a Defendant to a problem and to give them an opportunity to correct it before a lawsuit is filed.   *Perez*, 182 F.3d 537-38. The March 6 grievance was on a form that did not require detail; and, by failing to respond to it, Defendants have essentially waived any argument as to procedural deficiencies.   That grievance would have alerted Wexford that there was a systemic problem in getting dental treatment. Plaintiff's further statement in the March 9 grievance that there was a "strategic move" to delay

---

[2] Prior manifestations of the Administrative Code did not require a detailed recitation of the complaint; since 2003, however, the Code has required the who, what, when, and where of a complaint.  ILL. ADMIN. CODE TIT. 20, § 504.810(b); *Maddox*, 655 F.3d at 721.  This change is reflected, in the instructions on the grievances contained in the record.  The March 6 grievance requires only a "brief summary of grievance" whereas the March 9 grievance seeks more: "a description of what happened, when, and where it happened, and the name or identifying information for each person involved."

treatment also would have alerted Wexford of a policy argument.  Therefore, notwithstanding the factual limitations contained in the Screening Order, Plaintiff has exhausted as to a policy and practice claim against Wexford.

RECOMMENDATIONS

For the foregoing reasons, it is **RECOMMENDED** that the Motion for Summary filed by Allsup, Butler, Godinez, Oakley, and Walls be **GRANTED IN PART** (Doc. 38) as to Allsup, Godinez, Oakley, and Walls, that the Motion for Summary Judgment filed by Wexford and Trost be **GRANTED IN PART** as to Trost, that the claims against Allsup, Godinez, Oakley, Walls, and Trost be **DISMISSED WITHOUT PREJUDICE,** and that the Court adopt the foregoing findings of fact and conclusions of law.

In light of the foregoing, it is further **RECOMMENDED** that this matter proceed on Count 1 as to John Doe #1 (i.e. Dr. Strow), Kimberly Butler, and Wexford Health Sources, Inc. only.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto.  The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals.  *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: November 2, 2016**

**DONALD G. WILKERSON**
**United States Magistrate Judge**