IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DARRELL WIMBERLY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 16-cv-202-NJR-GCS |
| | ) | |
| WEXFORD HEALTH SOURCES, | ) | |
| INC., DR. WALLACE STROW, and | ) | |
| KIMBERLY BUTLER, | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Pending before the Court are two motions for summary judgment, one filed by Defendants Wexford Health Sources, Inc. and Dr. Wallace Strow (Doc. 107) and another filed by Defendant Kimberly Butler (Doc. 111). Plaintiff Darrell Wimberly, through counsel, has responded to both motions (Doc. 121), and Defendants Wexford and Dr. Strow have filed a reply (Doc. 122). For the reasons set forth below, the Court grants in part and denies in part the motion filed by Defendants Wexford and Dr. Strow and denies the motion filed by Defendant Butler.

### BACKGROUND

Wimberly alleges that Defendants Wexford, Butler, and Dr. Strow were deliberately indifferent to his serious dental needs during his incarceration at Menard Correctional Center ("Menard") in 2014 and 2015. Defendant Dr. Strow is a dentist employed by Defendant Wexford who Wimberly claims failed to provide him with

necessary treatment for his dental pain and cavities. Wimberly maintains that Defendant Wexford has a policy or custom of unnecessarily delaying dental care and claims that he spent a year in serious pain waiting for adequate treatment from Defendant Dr. Strow and other dentists at Menard. Defendant Butler was the warden at Menard during the events alleged in Wimberly's complaint. Wimberly alleges that he wrote to Ms. Butler several times about his dental pain and that she knew of his serious medical needs but disregarded them.

As narrowed by threshold review and the Court's ruling on the motions for summary judgment on the issue of exhaustion, Wimberly proceeds on a single count:

> **Count 1**: Defendants Dr. Strow, Butler, and Wexford violated Wimberly's Eighth Amendment rights by acting with deliberate indifference to his serious oral health issues.[1]

(Doc. 6; Doc. 61; Doc. 74).

## RELEVANT FACTS

Inmates at Menard Correctional Center ("Menard") request dental appointments by sending a written request. The receptionists and dental assistants review the request slips, which contain a narrative of an inmate's dental issue, and schedule appointments. It was a policy at Menard to schedule dental appointments within ten days of the receipt of a request. If an inmate has an urgent dental need, he can be seen on a nurse sick call immediately. An officer or other official can also call the dental department to have a

---

[1] Within this count, Wimberly alleges that Defendant Wexford had a policy or practice of only distributing generic painkillers even if they are ineffective and denying inmates access to healthcare (Doc. 6, p. 3-5). Wimberly alleges that these policies also caused his unconstitutional injuries (*Id.*).

patient brought in for a prompt appointment (Deposition of Wallace Strow, Doc. 108-1, p. 19-20).

Defendant Butler, the warden at Menard during the events alleged in Wimberly's complaint, testified at her deposition that inmates could request dental appointments by writing a sick call slip and submitting it to a medical box in the inmate's housing unit. Inmates also could discuss their issues with staff, and the staff could intervene and call the dental unit on an inmate's behalf. Unless it was an emergency, inmates were expected to use the sick call slip to request treatment (Deposition of Kimberly Butler, Doc. 108-4, p. 9). Emergency dental care could be provided during a lockdown (Doc. 108-4, p. 10-11).

Menard is a maximum-security prison, and thus, according to Dr. Strow, the number of inmates seen by a dentist in a given day depends on inmate movement and the level of security (Doc. 108-1, p. 22). As part of his occupation, Dr. Strow interpreted x-rays, developed treatment plans, and provided restorative and prosthetic services. Dr. Strow could not point to one type of dental treatment that he performed more often than another (Doc. 108-1, p. 23-24). In deciding whether to extract a tooth or to fill it, Dr. Strow testified that he considers both x-rays and clinical demonstration (Doc. 108-1, p. 35). There are no Wexford policies or procedures that he has to abide by in determining a treatment plan. He chooses a course of treatment based on his training in general dentistry (Doc. 108-1, p. 45).

Dr. Strow examined Wimberly three times. The first time was on January 8, 2014. He reviewed x-rays and examined Wimberly's teeth. He found extensive decay on teeth #4, #5, #12, and #13. Because of the extent of the decay, Dr. Strow requested additional

x-rays. He ultimately determined that these teeth were non-restorable and needed to be extracted, and he informed Wimberly of his findings (Doc. 108-1, p. 37-38). According to the dental chart, Wimberly indicated that he desired extractions and then fillings. Because Dr. Strow was concerned about the extent of damage due to the decay, he advised Wimberly to contact the dental office if he had any fever or swelling. Dr. Strow noted that Wimberly voiced no complaints of pain or discomfort; his treatment plan included extracting teeth #4, #5, #12, and #13 along with restoring teeth #14, #16, #18, #30, #31, and #32, if possible.

Wimberly was scheduled for extraction of teeth #4 and #5 by Dr. Strow on January 29, 2014, but Wimberly refused to have the teeth removed. Thus, Wimberly was to write when he wanted to continue treatment (Doc. 108-1, p. 38, 41). Wimberly testified that he believed there were not any big holes in his teeth and so he knew he could get fillings. He disagreed with Dr. Strow's evaluation, and that is why he refused the extractions (Deposition of Darrell Wimberly, Doc. 108-3, p. 13). Wimberly testified that he knew one of the treatment strategies at Menard was extracting teeth and that, once he started to refuse extractions, he started to receive fillings (Doc. 108-3, p. 15).

The last time Dr. Strow saw Wimberly was on June 20, 2014. Wimberly was having trouble eating and sleeping. He had sensitivity to cold air and experienced headaches and other pain. Some days he could not eat or drink cold beverages, and he missed work shifts as a janitor as a result (Doc. 108-3, p. 44-46). After performing an examination, Dr. Strow encouraged Wimberly to have teeth #14 and #16 extracted, but Wimberly only wanted fillings (Doc. 108-1, p. 26).

The consent form Wimberly signed authorized Dr. Strow to restore or to extract the teeth on June 20, 2014. If the pulp was affected, then Dr. Strow would extract the teeth. After advising Wimberly of the risks, Dr. Strow filled the cavities in the two teeth. During the restorations, Dr. Strow found very deep decay. Dr. Strow's treatment plan involved Wimberly returning for a filling on tooth #18 (Doc. 108-1, p. 26-27, 33).

According to Wimberly, he wrote letters to the dentist on August 16, 2014, September 8, 2014, and December 3, 2014 (Doc. 108-3, p. 38). Wimberly testified that he made handwritten copies of the letters and that he keeps copies of everything he puts in the mail (Doc. 108-3, p. 39-41). He threw out his copies of the dental treatment request slips after writing out new copies to attach to his complaint (Doc. 108-3, p. 42).

Wimberly was seen for teeth #5, #12, and #13 on October 3, 2014, but no treatment was provided. He was scheduled for extractions of #12 and #13 in November 2014, but the appointments had to be rescheduled (Doc. 121-5, p. 8). Wimberly testified that he wrote to Defendant Butler on December 3, 2014, about the pain he was experiencing from his cavities. He claims that he wrote to her again in January 2015 and March 2015. He filed two grievances in March 2015 (Doc. 108-3, p. 50-51). Ms. Butler denies receiving the letters and maintains that she did not see his grievances either (Doc. 108-4, p. 11).

When correspondence from inmates would come to Warden Butler's office, her executive assistant would read them first and pass along anything regarding threats of imminent harm or danger to staff or an inmate immediately. Any other issues, such as a dental complaint, would be routed to the appropriate department (Doc. 108-4, p. 11-12). Julie Eggemeyer, the executive secretary responsible for reviewing inmate

correspondence sent to Defendant Butler during 2014 and 2015, submitted an affidavit stating that she reviewed the correspondence logs and found no correspondence sent by Wimberly to Defendant Butler in 2014 or 2015 (Doc. 113-3).

Wimberly was scheduled for a filling on March 17, 2015, but his appointment was canceled due to a lockdown (Doc. 121-5, p. 10). Wimberly disputes that there was a lockdown on March 17, 2015 (Doc. 121-6). A dental appointment scheduled for April 3, 2015, was also rescheduled due to no movement at Menard (Doc. 121-5, p. 10). This pattern continued until Wimberly eventually had tooth #12 extracted in September 2015. Tooth #5 was extracted in December 2015 (Doc. 121-5, p. 10, 30; Doc. 108-3, p. 52-53). Tooth #13, which had been an issue since 2014, was not filled until March 12, 2016 (Doc. 121-5, p. 12).

### LEGAL STANDARDS

I. **Summary Judgment Standard**

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *Archdiocese of Milwaukee v. Doe,* 743 F.3d 1101, 1105 (7th Cir. 2014), *citing* FED. R. CIV. P. 56(a). *Accord Anderson v. Donahoe,* 699 F.3d 989, 994 (7th Cir. 2012). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). *Accord Bunn v. Khoury Enterpr., Inc.,* 753 F.3d 676, 681-82 (7th Cir. 2014).

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012); *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, 756 F.3d 542 (7th Cir. 2014).

II. **Eight Amendment Deliberate Indifference**

The Eighth Amendment prohibits cruel and unusual punishment and deliberate indifference to the "serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009). A prisoner is entitled to "reasonable measures to meet a substantial risk of serious harm"—not to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

In order to prevail on a claim of deliberate indifference, a prisoner who brings an Eighth Amendment challenge of constitutionally-deficient medical care must satisfy a two-part test. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). The first consideration is whether the prisoner has an "objectively serious medical condition." *Arnett*, 658 F.3d at 750. *Accord Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). "A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Hammond v. Rector*, 123 F. Supp. 3d 1076,

1084 (S.D. Ill. 2015) (citing *Pyles v. Fahim,* 771 F.3d 403, 409 (7th Cir. 2014)). It is not necessary for such a medical condition to "be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). *Accord Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (violating the Eighth Amendment requires "deliberate indifference to a *substantial* risk of *serious* harm") ((internal quotation marks omitted) (emphasis added).

The second consideration requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *Id.* at 653. A plaintiff need not show the individual "literally ignored" his complaint, but that the individual was aware of the condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). "Something more than negligence or even malpractice is required" to prove deliberate indifference. *Pyles*, 771 F.3d at 409; *see also Hammond v. Rector*, 123 F. Supp. 3d 1076, 1086 (S.D. Ill. 2015) ("isolated occurrences of deficient medical treatment are generally insufficient to establish . . . deliberate indifference"). Deliberate indifference involves "intentional or reckless conduct, not mere negligence." *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) (citing *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010)).

Assessing the subjective prong is more difficult in cases alleging inadequate care as opposed to a lack of care. Without more, a "mistake in professional judgment cannot be deliberate indifference." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016). The Seventh Circuit has explained:

> By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment. A doctor who claims to have exercised professional judgment is effectively asserting that he lacked a sufficiently culpable mental state, and if no reasonable jury could discredit that claim, the doctor is entitled to summary judgment.

*Id.* (citing *Zaya v. Sood*, 836 F.3d 800, 805-06 (7th Cir. 2016)). This is in contrast to a case "where evidence exists that the defendant [ ] knew better than to make the medical decision[ ] that [he] did," *Id.* (quoting *Petties v. Carter*, 836 F.3d 722, 731 (7th Cir. 2016)) (alterations in original). A medical professional's choice of an easier, less efficacious treatment can rise to the level of violating the Eighth Amendment, however, where the treatment is known to be ineffective but is chosen anyway. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010).

## ANALYSIS

Tooth decay can cause pain and is associated with a risk of infection, and it can constitute an objectively serious medical condition. *Berry*, 604 F.3d at 440 (citing *Board v. Farnham*, 394 F.3d 480-81 & n.4, 482-83 (7th Cir. 2005); *Harrison v. Barkley*, 219 F.3d 132, 137 (2d. Cir. 2000)). Because Defendants do not raise a challenge to the seriousness of Wimberly's dental problems (in fact, Defendant Butler actually concedes this point), the Court finds that a reasonable jury could conclude that Wimberly had an objectively serious medical need.

### I. Deliberate Indifference Claim Against Dr. Wallace Strow

A prisoner's dissatisfaction with a medical professional's prescribed course of treatment does not give rise to a successful deliberate indifference claim unless the

treatment is so "blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). Dr. Strow saw Wimberly on three occasions before Dr. Strow left Menard in November 2014. During the first appointment in January 2014, he developed a treatment plan that involved the extraction of teeth #4, #5, #12, and #13. At the second appointment on January 29, 2014, teeth #4 and #5 were scheduled to be extracted, but Wimberly refused this treatment by signing a medical refusal form. Wimberly was told to write when he wanted additional treatment. The final appointment Wimberly had with Dr. Strow was on June 20, 2014. Dr. Strow again encouraged Wimberly to allow the extractions discussed in January. When Wimberly refused, Dr. Strow filled teeth #14 and #16.

Wimberly does not dispute the facts related to his encounters with Dr. Strow. Instead, he points to a lack of treatment after his last appointment with Dr. Strow and to periods of delay in his dental treatment that occurred after Dr. Strow left Menard in November 2014. These delays, however, are not fairly attributed to Dr. Strow. While Dr. Strow was aware of Wimberly's dental needs, there is no evidence that Dr. Strow disregarded an excessive risk to Wimberly. Dr. Strow saw Wimberly three times. Each time, he recommended treatment and discussed with Wimberly the risks of not receiving treatment.

There is no evidence of a lack of treatment or a refusal to provide treatment by Dr. Strow. Many of Wimberly's complaints in his response to Dr. Strow's motion for summary judgment address a lack of care by other members of the dental staff at Menard.

Based on the record before the Court, no reasonable juror could conclude that Dr. Strow had the sufficiently culpable mental state required to establish that he was deliberately indifferent. As such, Dr. Strow is entitled to summary judgment.

## II. Deliberate Indifference Claim Against Wexford Health Sources, Inc.

Typically, the doctrine of *respondeat superior* does not apply in Section 1983 cases. *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014) (citing *Iskander v. Village of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982)). In *Monell v. Dep't of Social Servs. of the City of New York*, however, the Supreme Court held that a municipality may be liable under Section 1983 for constitutional violations resulting from a policy or custom of the municipality. 436 U.S. 658, 690–91 (1978). The Seventh Circuit has extended *Monell* beyond municipalities to include private corporations providing government services, such as Defendant Wexford. *See Shields*, 746 F.3d at 789. Absent a deprivation of a constitutional right, a claim under *Monell* cannot succeed. *Rice v. Correctional Medical Servs.*, 675 F.3d 650, 675 (7th Cir. 2012).

Liability under *Monell* may be shown three ways. First, a plaintiff may establish that the unconstitutional action "'implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017) (quoting *Los Angeles County v. Humphries*, 562 U.S. 29, 35 (2010)). Second, the plaintiff may prove that a custom was created by "'those whose edicts or acts may fairly be said to represent official policy.'" *Glisson*, 849 F.3d at 379 (quoting *Monell*, 436 U.S. at 690 – 91). Lastly, a plaintiff may demonstrate liability by establishing a widespread custom. *Glisson*, 849 F.3d at 379.

Liability may extend to customs "so permanent and well settled as to constitute a custom or usage with the force of law" even though they received no formal approval. *Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)). A widespread custom may be established by evidence of policymaking officials' knowledge and acquiescence to the unconstitutional practice. *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 511 (7th Cir. 1993). Sufficient evidence may include proof that the practice was so "longstanding or widespread" that it would "support the inference that policymaking officials 'must have known about it but failed to stop it.'" *Id.* (quoting *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991)).

Wimberly complains about two policies that he claims violated his constitutional rights. First, he claims that Wexford dentists prescribe only generic painkillers and that they do not work. There is no evidence to support this claim, however, and his response to Wexford's summary judgment motion seemingly abandons it. Instead, Wimberly focuses on the delays in his treatment and in the processing of his dental requests.

Wimberly presents evidence of dental pain that went untreated for long periods of time. Wimberly presents evidence that Wexford had a contractual obligation to treat inmates who complain of painful cavities that hinder the inmate's ability to eat within three business days, yet Dr. Strow testified that it was Wexford's policy to schedule dental requests within ten days, not three. Additionally, the record reflects that Wimberly's cavities went untreated for far longer periods of time. Teeth that were diagnosed as problematic in January 2014 went untreated for more than a year.

Wimberly's dental records reflect that he had several appointments canceled due to lockdowns or other various reasons. The records of lockdowns at Menard do not match some of the notations of lockdowns in the medical records, creating an issue of fact as to whether his appointments were actually canceled for that reason (Doc. 121-5, p. 10; Doc. 121-6). Drawing all reasonable inferences in favor of Wimberly, a reasonable jury could conclude that there was a policy or practice at Menard of delaying dental treatment in such a way that rises to the level of deliberate indifference.

### III. Deliberate Indifference Claim Against Kimberly Butler

The parties dispute whether Defendant Butler was aware of Wimberly's dental needs. Wimberly claims to have submitted letters to Ms. Butler by following the normal process, but she does not recall receiving them. The correspondence logs also suggest that she did not receive the letters.

An official can be shown to have personal responsibility, as required by Section 1983, if she knows of the conduct causing a constitutional deprivation and turns a blind eye. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (citing references omitted). Construing all facts in Wimberley's favor, a jury could find that Defendant Butler failed to act despite being aware of a risk to his health. As such, she cannot prevail on summary judgment.

Defendant Butler also raises qualified immunity as a defense. Qualified immunity shields "government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The

doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id*. It protects an official from suit "when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

The qualified immunity test has two prongs: (1) whether the facts shown, taken in the light most favorable to the party asserting the injury, demonstrate that the officer's conduct violated a constitutional right, and (2) whether the right at issue was clearly established at the time of the alleged misconduct. *See Pearson*, 555 U.S. at 232. *See also Brosseau*, 543 U.S. at 197; *Wilson v. Layne*, 526 U.S. 603, 609 (1999). "The doctrine of qualified immunity protects government officials from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Humphries v. Milwaukee Cnty.*, 702 F.3d 1003, 1006 (7th Cir. 2012) (citations and quotation marks omitted).

It was clearly established at the time of Wimberly's dental troubles that prison officials cannot act with deliberate indifference to an inmate's serious medical needs. *See, e.g. Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005); *see also Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) ("Indeed, 'dental care is one of the most important medical needs of inmates.'"). Additionally, as explained above, the facts viewed in the light most favorable to Wimberly could demonstrate that Defendant Butler's conduct violated his constitutional rights. Because there is sufficient evidence to create a dispute of fact as to

whether Defendant Butler was deliberately indifferent to Wimberly's dental needs, the Court finds that she is not entitled to qualified immunity.

## CONCLUSION

For the reasons set forth above, the Court **DENIES** the motion for summary judgment filed by Defendant Kimberly Butler (Doc. 111) and **GRANTS in part** and **DENIES in part** the motion for summary judgment filed by Defendant Dr. Wallace Strow and Defendant Wexford Health Sources, Inc. (Doc. 107). The motion is granted as to Defendant Dr. Wallace Strow and denied as to Defendant Wexford Health Sources, Inc. Wimberly's claim against Defendant Dr. Wallace Strow is **DISMISSED with prejudice**. At the close of this case, the Clerk of Court shall enter judgment in favor of Defendant Dr. Wallace Strow and against Plaintiff Darrell Wimberly. The Clerk of Court is **DIRECTED** to terminate Defendant Dr. Wallace Strow as a party to this action.

Plaintiff Darrell Wimberly's deliberate indifference claims within Count 1 against Defendants Butler and Wexford Health Sources, Inc. are the only claims that remain pending.

A status conference will be set by separate order for the purpose of selecting firm dates for a final pretrial conference and jury trial.

**IT IS SO ORDERED.**

DATED: March 29, 2019

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**